FILED

2018 MAY 22 PM 12: 15

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

$51,030.00 IN UNITED STATES
CURRENCY,

Defendant.

CASE NO.

3:18 cv 665-J-32MCR

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff United States of America brings this complaint and alleges upon information and belief as follows:

### I.   NATURE OF THE ACTION

1.   This is a civil action *in rem* to forfeit to the United States of America the sum of $51,030.00 in United States Currency (defendant funds).

2.   The defendant funds were seized on December 20, 2017, in Jacksonville, Florida and are in the government's custody, having been

deposited into the United States Customs and Border Protection Suspense Account on December 22, 2017.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

4. This Court has *in rem* jurisdiction over the defendant funds because pertinent acts giving rise to the forfeiture occurred in the Middle District of Florida. 28 U.S.C. § 1355(b)(1)(A).

5. Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395(a), because the defendant funds were seized within the Middle District of Florida, Jacksonville Division.

6. Because the defendant funds are in the government's possession, custody, and control, the United States requests that this Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). Rule G(3)(b)(1) requires the Clerk to issue a warrant of arrest *in rem* for defendant property if such property is in the government's possession, custody, or control.

7. After the Court issues the warrant of arrest *in rem*, the United States will execute the warrant pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

### III. STATUTORY BASIS FOR FORFEITURE

8. The defendant funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because they constitute proceeds traceable to the exchange of a controlled substance or were intended to be exchanged for a controlled substance in violation of 21 U.S.C. §§ 801 *et seq.*

### IV. FACTS

9. Specific details of the facts and circumstances supporting the forfeiture of the defendant funds have been provided by United States Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent Ashley Wilson. She states as follows:

10. Agent Wilson has been a Special Agent with HSI since October 2007. She is currently assigned to the Office of the Assistant Special Agent in Charge, Jacksonville, Florida, where she conducts a variety of investigations. Prior to this assignment, she was assigned to the Office of the Deputy Special Agent in Charge, Laredo, Texas for approximately six years also as a Special Agent.

3

11. Based upon her training and experience, she is knowledgeable about the various ways in which narcotics traffickers import, store, manufacture and distribute drugs and finance drug operations. She is also knowledgeable about the currency and other proceeds derived from large-scale narcotics trafficking. She is aware, through her experience and training, that narcotics traffickers transport currency associated with drug transactions in a concealed manner to avoid detection by law enforcement and that often the currency is banded together in a manner associated with narcotics trafficking.

12. Based on her training and experience, SA Wilson knows that narcotics traffickers commonly utilize numerous cell phones or phone numbers in order to avoid law enforcement detection. As an example, if a narcotics customer is arrested, it is common for the trafficker to "dump" or change his or her cell phone.

A. **Seizure of Currency at Jacksonville International Airport**

13. SA Wilson was a member of the North Florida High Intensity Drug Trafficking Area Money Laundering Task Force for approximately three years. As a result of this affiliation, she was contacted by Jacksonville Aviation Authority Police Department (JAAPD) Detective B. Montgomery in reference to a seizure of $51,030.00 of United States (U.S.) currency from

4

Chunita Hines at the Jacksonville International Airport on December 20, 2017.

14. Detective Montgomery stated that earlier on December 20, 2017, Transportation Security Administration (TSA) Officers encountered Hines during a routine, pre-flight passenger screening. An X-ray screening of Hines' carry-on luggage revealed an anomaly in the luggage as it passed through the x-ray machine. They opened the luggage and discovered the concealed currency. Subsequently, Supervisory Transportation Screening Officer W. Creel advised JAAPD Officer R. K. Nelson of the discovery of the currency. JAAPD Officer Nelson was assigned to the TSA security checkpoint and made contact with Hines. Hines was identified by her Florida driver's license (H520-103-84-683-0).

**B. Investigation by Jacksonville Aviation Authority Police**

15. JAAPD Officer Nelson observed the U.S. currency in Hines' carry-on luggage after it had been opened by TSA officers.

16. JAAPD Officer Nelson questioned Hines about the U.S. currency and asked her why it was concealed in her socks. Hines told JAAPD Officer Nelson she was a dancer and traveling to California to have fun and go shopping. Hines initially stated she had about $4,000.00, and later changed the amount to $9,000.00 total. JAAPD Officer Nelson

contacted JAAPD Detective B. Montgomery and advised him of the discovery of the currency.

17.  Detective Montgomery responded to the TSA security checkpoint and had a brief conversation with Hines. Detective Montgomery asked Hines if she would go to the JAAPD office to continue talking about the currency. Hines voluntarily agreed and walked to the JAAPD office on the lower level of the airport with Detective Montgomery. Hines told Detective Montgomery she was traveling with two friends named "Slim" and "Bear" and added part of the money belonged to "Slim," but she was unable to give a dollar amount.

18.  While in the JAAPD office, Detective Montgomery and JAAPD Officer Nelson took photographs of the U.S. currency. Multiple bundles of U.S. currency, mostly in $20.00, $50.00, and $100.00 denominations, were discovered in Hines' carry-on luggage. Hines was carrying one black and blue backpack and one brown suitcase with wheels. The multiple bundles of U.S. currency were wrapped with different colored rubber bands and concealed inside her socks that were located in her brown suitcase and a cover-up that was located in her backpack.

19. Detective Montgomery contacted SA Wilson and advised her of the situation. She responded to the Jacksonville International Airport and conducted an interview of Hines with Detective Montgomery. Before interviewing her, SA Wilson advised Hines of her constitutional rights both verbally and in writing. Hines acknowledged her rights and agreed to talk to law enforcement officers without an attorney present.

20. Hines told SA Wilson that she was a dancer at the Mascara Gentleman's Club in Jacksonville and worked every other weekend. Hines stated she also dances at private parties on occasion. Hines explained she met two men during November 2017, one of whom -- "Slim" -- is her "sugar daddy." Hines met "Slim" at the club and does not know his true name. According to Hines, "Slim" is in his 40's and drives a white Porsche. Hines explained "Slim" spent $8,000.00 on her the first time they hung out, bought her gifts, and has paid her bills. Hines said "Slim" gave her the money to go shopping in Los Angeles. Hines stated the second man goes by the name "Bear" and is often seen with "Slim." Hines added she does not know his true name either.

21. Hines repeatedly stated the U.S. currency was hers and she packed it inside her carry-on luggage herself. Hines stated "Slim" and "Bear" invited her to go to Los Angeles approximately one week ago and added

"Slim" bought her plane ticket a couple days prior to the flight. Hines stated "Slim" gave her the confirmation number and she checked in at the American Airlines front desk. Hines said $9,000.00 was hers that she saved from working at the club. Hines stated the rest of the money was given to her by "Slim" as a gift to spend while shopping in Los Angeles. When asked how much money was in her carry-on luggage, Hines said about $14,000.00.

22. Hines explained that on the night before the flight, she was sitting at a table in the food court inside the Orange Park Mall with "Slim" when he slid the money across the table and told her, "have fun." Hines stated he gave her two stacks of currency wrapped with rubber bands and it was packaged in a small, black plastic bag.

23. Hines initially told SA Wilson that "Slim" and "Bear" were traveling to Los Angeles on the same day as her travel, but on a different flight. Hines added that "Slim" and "Bear" had their own travel plans and were traveling separately from her. Hines ultimately admitted "Slim" and "Bear" were with her before going through the TSA security checkpoint. During the interview, Hines continued to provide conflicting statements about the group's travel arrangements.

24. Hines added she was going to meet up with "Slim" and "Bear" at some point during her stay in Los Angeles, but they did not have solid plans.

25. SA Wilson asked Hines if she was getting paid to transport "Slim's" currency to Los Angeles and Hines replied, "No, it is my money. It was a gift." Hines stated "Slim" uses phone number (424) 307-7989 and she had it saved in her phone as "burrrr." Hines denied a consent search of her cell phone during the interview.

26. Jacksonville Sheriff's Office (JSO) Canine Officer D.B. Hall was dispatched, upon request, to the Jacksonville International Airport with his canine partner, "Bandit," to conduct a narcotic money sniff. According to the Jacksonville Sheriff's Office Canine Deployment Report, JSO Canine Officer Hall conducted two separate "bag line ups" due to the large amount of currency that was concealed in two separate bags. During the first "bag line up," Canine "Bandit" showed a positive indication on envelope number four, which contained the U.S. currency that was in Hines' possession. During the second "bag line up", Canine "Bandit" showed a positive indication on envelope number five which contained additional U.S. currency that was in Hines's possession. Positive indication means Canine

27. "Bandit" identified the odor of narcotics on both envelopes containing the U.S. currency that Hines' concealed in her carry-on luggage.

28. On the same day, SA Wilson met with American Airlines personnel in an attempt to identify the individuals with whom Hines was traveling. It was discovered three other individuals were linked to Hines' flight reservation: Dwayne Coley, Chadrick Collins, and Troy Jones. The information used to purchase Hines' flight was identified as Dwayne Coley.

29. On December 22, 2017, SA Wilson met Detective Montgomery at the JSO property room. The JSO Property custodians provided her with a check made payable to U.S. Customs and Border Protection in the amount of $51,030.00, which she transferred to the United States Customs and Border Protection's Office of Fines, Penalties, and Forfeitures.

30. On January 10, 2018, United States Customs and Border Protection's Office of Fines, Penalties, and Forfeitures sent a notice of seizure to Hines.

C. **Additional Investigation by Declarant**

31. Collins has multiple convictions, including a 2001 conviction for possession of dangerous drugs and 2013 convictions for possession of cocaine and marijuana. Most recently, Collins was arrested by the

Jacksonville Beach Police Department on May 6, 2018 for possession of marijuana.

32. Coley has been arrested three times in Georgia since 2011 for various drug related charges, including possession and distribution of marijuana and possession of a controlled substance.

33. The Florida Department of Economic Opportunity did not have any record for Hines in 2017 or 2018. The most recent information available for Hines was from the third quarter of 2016, during which she earned $1,229.94 from Waterway Bar and Grill, LLC.

34. The Florida Department of Economic Opportunity records showed the most recent information available for Collins was from the fourth quarter of 2003, during which he earned $528.30 from Toys R Us Delaware Inc; the most recent information available for Coley was from the fourth quarter of 2009, during which he earned $735.87 from the Jacksonville Zoological Society, Inc; and the most recent information available for Jones was from the first quarter of 2016, during which he earned $4,874.16 from Fanatics Retail Group Fulfillment, Inc.

35. SA Wilson requested information from T-Mobile regarding phone number (424) 307-7989, the phone number Hines provided to law enforcement and stated was "Slim's". According to T-Mobile, the account

was activated on September 5, 2017 and terminated on February 5, 2018. The name on the account was Chris Paul with an address of 9XXX Anzac Avenue, Los Angeles, California 90002. SA Wilson believed the information regarding the cell phone could be indicative of drug trafficking, since (1) the cell phone service was terminated close in time to the seizure and it was terminated on the same date as the cell phone number listed on Hines' flight reservation, as discussed in the paragraph below, and (2) this phone was linked to "Slim" (who is believed to be Chadrick Collins, traveling with Hines on the day of the seizure) yet the account on the phone was listed in the name of another individual, Chris Paul, of Los Angeles.

36. SA Wilson requested information from T-Mobile regarding phone number (904) 801-6491, the phone number listed on Hines' American Airline flight reservation. According to T-Mobile, the account was activated on December 5, 2017 and terminated on February 5, 2018. The name on the account was Tyrone Jones with an address in Jacksonville, FL.

37. There is probable cause to believe that the defendant funds are subject to forfeiture as proceeds traceable to the exchange of a controlled substance, or as currency which was intended to be exchanged for a controlled substance, in violation of 21 U.S.C. §§ 841 and 846 in that: Hines could not definitively state how much currency was in her

possession; Hines provided conflicting statements during her interview and other conversations with law enforcement; the distinctive manner in which the currency was banded and the concealed placement within her carry-on bags; the positive dog alert on both sets of currency; Collins, who is believed to be "Slim," and Coley, who is believed to be "Bear," both have criminal histories with drug arrests and/or convictions; Hines initially stated she was not traveling with "Slim" and "Bear", but later admitted they were together at the airport before entering the TSA security checkpoint; information from American Airlines confirms Hines was traveling with three other individuals; the phone numbers linked to Collins and Coley were terminated on the same day, shortly after the U.S. currency seizure at the Jacksonville International Airport.

### V. CONCLUSION

38. As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the defendant funds are proceeds traceable to the exchange of a controlled substance or were intended to be exchanged for a controlled substance, in

violation of 21 U.S.C.§§ 841 and 846 and, therefore, are subject to forfeiture pursuant to 21 U.S.C.§ 881(a)(6).

WHEREFORE, the United States of America requests that process in accordance with the provisions of Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, be issued against the defendant funds to enforce the forfeiture and that any person or persons having an interest therein be cited and directed to appear and show cause why it should not be decreed; and that defendant funds be forfeited to the United States; and that thereafter it be disposed of according to law; and for such other and further relief as this case may require.

Dated: May 22, 2018.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: *Bonnie A. Glober*
BONNIE A. GLOBER
Florida Bar No. 0748307
Assistant United States Attorney
United States Attorney's Office
300 N. Hogan Street, Suite 700
Telephone: (904) 301-6300
Fax: (904) 301-6310
E-mail: bonnie.glober@usdoj.gov

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Ashley Wilson, declare under penalty of perjury that:

I am a Special Agent with United States Immigration and Customs Enforcement, Homeland Security Investigations. I have read the foregoing Verified Complaint for Forfeiture *In Rem* and have personal knowledge that the matters alleged as fact in the Complaint are true.

I have acquired my knowledge in this matter through my personal experience, observation, investigation, and training, and from witnesses, records, and other law enforcement officers.

Executed on this 21st day of May, 2018.

_____
ASHLEY WILSON
Special Agent
Homeland Security Investigations

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

3:18 CV 665-J-32 MCR

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bonnie A. Glober, U.S. Attorney's Office, 300 N. Hogan Street, Suite 700, Jacksonville, FL 32202 (904) 301-6300

## DEFENDANTS
$51,030.00 IN UNITED STATES CURRENCY

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | [X] 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. 881(a)(6)
Brief description of cause:
civil forfeiture in rem

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes [X] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 5/22/18
SIGNATURE OF ATTORNEY OF RECORD
Bonnie A. Glober

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE 32 MAG. JUDGE MCR